JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

John Doe

**DEFENDANTS**

St. Edward High School, Nathan Brannen, James P. Kubacki, and KC McKenna

**(b)** County of Residence of First Listed Plaintiff   Cuyahoga
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Cuyahoga
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Brennan, Manna & Diamond- Jeffrey C. Miller, Russell T. Rendall & Donald W. Davis, Jr.- 216-658-2155

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 2   U.S. Government Defendant
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*   *and One Box for Defendant)*

|                                  | PTF | DEF |                                                             | PTF | DEF |
|----------------------------------|-----|-----|-------------------------------------------------------------|-----|-----|
| Citizen of This State            | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State         | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation                                      | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [x] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 USC 1681

Brief description of cause:
Violation of Title IX

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   5/25/2021

SIGNATURE OF ATTORNEY OF RECORD   Jeffrey C. Miller

Digitally signed by Jeffrey C. Miller
Date: 2021.05.25 10:44:07 -04'00'

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

**I.**  Civil Categories: (Please check one category only).

1. [✓]  General Civil
2. [ ]  Administrative Review/Social Security
3. [ ]  Habeas Corpus Death Penalty

*If under Title 28, §2255, name the SENTENCING JUDGE: _____

CASE NUMBER: _____

**II.**  **RELATED OR REFILED CASES** See LR 3.1 which provides in pertinent part: "If an action is filed or removed to this Court and assigned to a District Judge after which it is discontinued, dismissed or remanded to a State court, and subsequently refiled, it shall be assigned to the same Judge who received the initial case assignment without regardfor the place of holding court in which the case was refiled.  Counsel or a party without counsel shall be responsible for bringing such cases to the attention of the Court by responding to the questions included on the Civil Cover Sheet."

This action: [ ] is **RELATED** to another **PENDING** civil case [ ] is a **REFILED** case [ ] was **PREVIOUSLY REMANDED**

**If applicable, please indicate on page 1 in section VIII, the name of the Judge and case number.**

**III.**  In accordance with Local Civil Rule **3.8**, actions involving counties in the Eastern Division shall be filed at any of the divisional offices therein.  Actions involving counties in the Western Division shall be filed at the Toledo office. For the purpose of determining the proper division, and for statistical reasons, the following information is requested.

ANSWER ONE PARAGRAPH ONLY. ANSWER PARAGRAPHS 1 THRU 3 IN ORDER.  UPON FINDING WHICH PARAGRAPH APPLIES TO YOUR CASE, ANSWER IT AND STOP.

(1)  **Resident defendant**. If the defendant resides in a county within this district, please set forth the name of such county

**COUNTY:** Cuyahoga

Corporation **For the purpose of answering the above, a corporation is deemed to be a resident of that county in which it has its principal place of business in that district.**

(2)  **Non-Resident defendant**. If no defendant is a resident of a county in this district, please set forth the county wherein the cause of action arose or the event complained of occurred.

**COUNTY:**

(3)  **Other Cases**. If no defendant is a resident of this district, or if the defendant is a corporation not having a principle place of business within the district, and the cause of action arose or the event complained of occurred outside this district, please set forth the county of the plaintiff's residence.

**COUNTY:**

**IV.**  The Counties in the Northern District of Ohio are divided into divisions as shown below.  After the county is determined in Section **III**, please check the appropriate division.

**EASTERN DIVISION**

[ ]  **AKRON**  (Counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas and Wayne)
[✓]  **CLEVELAND**  (Counties: Ashland, Ashtabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina and Richland)
[ ]  **YOUNGSTOWN**  (Counties: Columbiana, Mahoning and Trumbull)

**WESTERN DIVISION**

[ ]  **TOLEDO**  (Counties: Allen, Auglaize, Defiance, Erie, Fulton, Hancock, Hardin, Henry, Huron, Lucas, Marion, Mercer, Ottawa, Paulding, Putnam, Sandusky, Seneca VanWert, Williams, Wood and Wyandot)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **JOHN DOE,** )<br>)<br>*Plaintiff,* )<br>)<br>c/o Brennan Manna Diamond, LLC )<br>Jeffrey C. Miller, Esq. )<br>200 Public Square, Suite 3270 )<br>Cleveland, OH 44114 )<br>)<br>v. )<br>)<br>**ST. EDWARD HIGH SCHOOL,** )<br>13500 Detroit Avenue )<br>Lakewood, Ohio 44107 )<br>)<br>c/o TE Agent Corp. )<br>950 Main Avenue, Suite 1100 )<br>Cleveland, OH 44113 )<br>)<br>and )<br>)<br>**NATHAN BRANNEN,** )<br>c/o St. Edward High School )<br>13500 Detroit Avenue )<br>Lakewood, Ohio 44107 )<br>)<br>and )<br>)<br>**JAMES P. KUBACKI,** )<br>c/o St. Edward High School )<br>13500 Detroit Avenue )<br>Lakewood, Ohio 44107 )<br>)<br>and )<br>)<br>**KC MCKENNA,** )<br>c/o St. Edward High School )<br>13500 Detroit Avenue )<br>Lakewood, Ohio 44107 )<br>)<br>)<br>*Defendants.* | **COMPLAINT**<br><br>CASE NO.<br><br>Honorable |

Now comes John Doe, on behalf of himself and all similarly situated, and for his Complaint against Defendants St. Edward High School, Nathan Brannen, James Kubacki, and KC McKenna states the following:

1.  Plaintiff John Doe is a juvenile resident of Cuyahoga County, Ohio, 17 years of age, and is a former student of St. Edward High School.

2.  Plaintiff is entitled to anonymity in these proceedings because of his status as a juvenile and to mitigate the threat of further reprisals and retaliation against him.

3.  Before, during, and after his enrollment at St. Edward High School, Plaintiff was subjected to physical and sexual assaults, harassment, hazing, bullying and retaliation from other students associated with the track and cross-country teams.

4.  Defendant St. Edward High School is an Ohio non-profit corporation, sponsored by the Brothers of Holy Cross, and operates within Cuyahoga County, Ohio.

5.  Defendant Nathan Brannen was, at all times relevant, an employee of St. Edward High School and its Head Coach of the track and cross-country teams.

6.  Defendant James P. Kubacki was, at all times relevant, an employee of St. Edward High School and the President of the school and its Board.

7.  Defendant KC McKenna was, at all times relevant, an employee of St. Edward High School and the Principal of the school.

**JURISDICTION AND VENUE**

8.  Plaintiff's legal claims are based, in part, on alleged violations of 20 U.S.C. § 1681, et seq., its interpreting regulations, and Department of Education/Office of Civil Rights policies. Jurisdiction is conferred pursuant to 28 U.S.C. § 1331.  This Court has

supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. § 1367.

9. Venue in this action is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events, acts or omissions giving rise to Plaintiff's claims occurred in this district.

10. This court has subject matter jurisdiction.

## FACTS COMMON TO ALL CLAIMS

11. In 2019, Plaintiff decided to enroll in St. Edward High School over other options available to him based on the representations of St. Edward High School regarding its school mission, student life and responsibility, and its commitment to excellence.

12. The representations were made during Plaintiff's visits to the school, on its website www.sehs.net, and in its publications, including the Student & Parent/Guardian Handbook.

13. Those representations have proven false.

14. Prior to beginning high school, Plaintiff was an excellent student and a gifted runner who excelled in track and cross-country.

15. Defendant Brannen encouraged Plaintiff to attend a week-long, overnight running camp in the summer before his freshman year with older students from St. Edward High School who were on the track and cross-country teams.

16. In July of 2019, Plaintiff attended the NEO XC Camp in Bellville, Ohio and was assigned to housing with older St. Edward High School students.

17. The attendees of the camp were largely left unsupervised.

18. Over the course of the camp, Plaintiff was physically assaulted in a sexual manner by a student of St. Edward High School on three (3) separate occasions.

19.    The student, Delinquent 1, was older and physically stronger than Plaintiff.

20.    Each incident was unprovoked.  Delinquent 1 approached Plaintiff, threw him down, pinned his arms, and then simulated anal sex upon Plaintiff.

21.    In each incident, other St. Edward High School students were present and observed the behavior.

22.    Out of fear and intimidation, Plaintiff did not report the assaults.

23.    Delinquent 1 also engaged in outrageously inappropriate sexual behavior with another camp attendee and was caught by a camp representative.

24.    The camp administrators required Delinquent 1 to call his parents to report the misconduct; however, Delinquent 1 instead called another family member who pretended to be his mother.

25.    Delinquent 1 was then caught boasting to other camp attendees about how he had deceived the camp administrators.

26.    The inappropriate behavior of Delinquent 1 was reported to Defendant Brannen.

27.    As of July of 2019, Defendant Brannen knew or should have known that Delinquent 1 engaged in inappropriate sexual misconduct when left unsupervised and that he lacked respect for authority.

28.    In September of 2019, Plaintiff was a freshman at St. Edward High School and a member of the cross-country team.

29.    On September 6, 2019, at a team-sponsored pre-meet dinner, Delinquent 1, also a member of the cross-country team, followed Plaintiff into the restroom.

30.    In direct view of other St. Edward High School students, Delinquent 1 threw Plaintiff to the floor, pinned his arms, and simulated anal sex upon Plaintiff.

31. Delinquent 1 and other students then mocked Plaintiff and openly laughed about the assault upon returning to the team dinner.

32. Out of fear and intimidation, Plaintiff did not report this assault.

33. On or about September 20, 2019, the St. Edward High School cross-county team traveled to Dayton, Ohio for a multi-day meet where the team stayed overnight in a hotel.

34. Defendant Brannen assigned the students to rooms, and his supervision then ceased in its entirety.

35. Plaintiff was assigned to a room with three other freshmen students, including Delinquent 3 and Delinquent 4.

36. On September 20, 2019, Delinquent 1 and/or Delinquent 2 instructed Delinquent 3 and/or Delinquent 4 to leave the door to Plaintiff's room unlocked.

37. During the evening of September 20, 2019, Delinquent 1, Delinquent 2, Delinquent 5 and other older members of the St. Edward High School cross-country team entered Plaintiff's room while Plaintiff was seated on his bed.

38. Delinquent 1 approached Plaintiff and pinned and held him face down so that he could not fight or escape.

39. Delinquent 1 locked Plaintiff's arm and otherwise fully restricted Plaintiff's movement.

40. Delinquent 1 then physically assaulted Plaintiff in a sexual manner, the same as he did before, simulating anal sex.

41. None of the other students intervened, and instead were all heard laughing.

42. Delinquent 3 filmed the sexual assault with his personal smartphone.

43. A copy of the video captured by Delinquent 3 has been preserved and is available for inspection.

44. Delinquent 4 is seen on the video also filming the sexual assault on his personal smartphone.

45. Upon information and belief, Delinquent 2 and other members of the St. Edward High School cross-country team also filmed the assault with their personal smartphones.

46. Over the next days and months, members of the St. Edward High School cross-country team shared videos of the assault amongst themselves, other teammates who were not present, and other students at St. Edward High School across social media.

47. The video of Delinquent 1 holding down and committing the physical, sexual assault against Plaintiff became known as "The Rape Video."

48. The video was shared for the purpose of humiliating and intimidating Plaintiff and to prevent him from reporting the assault.

49. On or about August 28, 2020, Delinquent 1 and/or Delinquent 2 again shared the video among the St. Edward High School cross-country group Snapchat.

50. Plaintiff's parents happened to see the video on August 30, 2020. They preserved the video and contacted Defendant Brannen about the need for an immediate meeting of utmost importance.

51. On September 1, 2020, Plaintiff's parents met with Defendant Brannen and began the meeting by informing him that they saw a video of their son being assaulted by another member of the St. Edward High School cross-country team.

52. After viewing the video, Defendant Brannen informed Plaintiff's parents that he did not need to review the video to know that Delinquent 1 was the perpetrator, and referred to Delinquent 1 as "a fucking asshole."

53. When Plaintiff's parents inquired as to why Defendant Brannen would allow an unsupervised setting wherein the assault could occur, Defendant Brannen responded that he did not want to be responsible for any supervision, and instead only wanted to coach the team.

54. Defendant Brannen informed Plaintiff's parents that he knew about the sexual misconduct of Delinquent 1 at the unsupervised NEO XC camp, which predated the assault in Dayton.

55. Defendant Brannen refused to listen to the audio of The Rape Video, even though Plaintiff's parents informed him that all of the team members were laughing at their son.

56. When Plaintiff's parents informed Defendant Brannen that they would be taking the matter to St. Edward High School administration, Defendant Brannen threatened them that a further report could make it worse on their son.

57. Defendant Brannen attempted to dissuade Plaintiff's parents from escalating the report.

58. On September 3, 2020, Plaintiff's parents met at St. Edward High School with Defendant Kubacki, Defendant McKenna, Defendant Brannen and others.

59. By this point, Plaintiff had shared with his parents the details of the assault that was captured on video.

60.     Plaintiff also shared screenshots of disturbing exchanges among the St. Edward High School cross-country team.

61.     On September 3 and September 4, 2020, Plaintiff's parents provided information about exchanges and images that had been shared by members of the cross-country team.  Specifically, Plaintiff's parents informed St. Edward High School and the individual Defendants with initial proof of the following disturbing social media exchanges:

   a.   The Rape Video;

   b.   Degrading comments against Plaintiff;

   c.   Screenshots of Delinquent 1 ranking the next class of incoming freshmen and suggesting that they be required to share nude images of themselves;

   d.   Bigoted and obscenely degrading homosexual comments;

   e.   An audio file of a scene of non-consensual anal sex between two men;

   f.   A screenshot showing the sharing and saving of an apparent pedophilic video;

   g.   A still image of a boy appearing to kiss a shirtless adult male;

   h.   Graphic photos and commentary regarding sexual behavior.

62.     The Rape Video shows a possible Sexual Battery by Delinquent 1, as prohibited by Ohio Revised Code § 2907.03 and/or Assault, as prohibited by O.R.C. § 2903.13.

63.     The Rape Video shows possible Sexual Imposition by Delinquent 1, as prohibited by Ohio Revised Code § 2907.06.

64.     The Rape Video was filmed by Delinquent 3 and constituted possible Pandering Obscenity Involving a Minor in violation of O.R.C. 2907.321 and/or Pandering Sexually Oriented Matter Involving a Minor in violation of O.R.C. § 2907.322.

65. The Rape Video shows concurrent filming by Delinquent 4, which constituted possible Pandering Obscenity Involving a Minor in violation of O.R.C. 2907.321 and/or Pandering Sexually Oriented Matter Involving a Minor in violation of O.R.C. § 2907.322.

66. On September 4, 2020, the Dean of Students of St. Edward High School informed the cross-country students and their parents via email of the initiation of an investigation "to fully understand and bring to light the impact of these types of postings."

67. However, on September 4, 2020, at almost the exacts same time as the email, Defendants specifically and verbally instructed the students to delete any and all imagery, videos, content, and/or exchanges on their smartphones or social media before the investigation could commence.

68. On September 8, 2020, Plaintiff informed Defendants of the other the assaults committed by Delinquent 1 at the NEO XC camp, in addition to confirming the assault captured in The Rape Video.

69. At that point, Defendants ceased any further investigation and informed Plaintiff and his parents that they would refer the matter for criminal investigation with the Lakewood Police Department.

70. Over the next week, Delinquent 1, Delinquent 2 and other St. Edward High School cross-country members continually pressured Plaintiff to lie to investigators and/or to create a false story about the assaults.

71. On September 13, 2020, Delinquent 2 and Delinquent 5 were overheard by Plaintiff concocting a story with another team member about how the assault was only a joke, and to stick with a story that Plaintiff was voluntarily "wrestling" with Delinquent 1.

72.     On September 15, 2020, Delinquent 2, who is believed to be a team captain, reminded the other team members to delete any evidence of the assault, hazing, or bullying.

73.     On September 15, 2020, Delinquent 5 acknowledged that several versions of The Rape Video existed and that it had been shared outside of St. Edward High School. Delinquent 5 instructed the other team members to delete all copies of the videos, as well as contacting those with whom the videos had been shared.

74.     On September 15, 2020, Delinquent 1 instructed the team members to delete any other inappropriate content.

75.     In that same exchanges, Delinquent 2 acknowledged that the assault on Plaintiff was not "the first time something like this happened, or the second time, or the third time for that matter . . .."

76.     All of the foregoing information was shared by Plaintiff and/or his parents with Defendants.  However, between September 8, 2020 and September 21, 2020, the entirety of the investigation of Defendants consisted of asking students leading questions about what they saw on the Dayton trip and whether Plaintiff acted upset by it.

77.     Defendants placed the investigation into the hands of an individual who was neither qualified nor trained to investigate sexual assault, hazing, bullying, or to review the social media history and electronic devices of the Delinquents.

78.     Throughout this period, Defendant McKenna continued to lie directly to Plaintiff and his parents.

79. Defendant McKenna repeatedly assured Plaintiff and his parents that St. Edward High School was continuing to cooperate fully with the Lakewood Police Department investigation.

80. Defendant McKenna made this representation to Plaintiff's parents as late as September 21, 2020.

81. However, as of at least September 16, 2020, the Lakewood Police Department had closed any investigation because it did not have jurisdiction over the events that occurred in Dayton, Ohio.

82. From September 19, 2020 through September 23, 2020, Plaintiff and his parents repeatedly and specifically informed Defendants that the assaults, the lack of any investigation, the continuing harassment and intimidation, and the dereliction of duty by Defendants was causing worsening physical injuries to Plaintiff who was vomiting, suffering insomnia, and otherwise suffering from post-traumatic stress disorder ("PTSD").

83. The Defendants determined that not enough evidence existed for any meaningful corrective measure.

84. Delinquent 1 was allegedly suspended from school; however, at that point in time, students were permitted to complete school on-line.  He resumed in-person school at the end of September or beginning of October of 2020.

85. Delinquent 3 was allegedly suspended for three days after he admitted to doctoring The Rape Video.

86.    Other students were directed to an on-line class on sexual sensitivity within social media, during which they continued to circulate inappropriate text exchanges through social media.

87.    Plaintiff stopped attending in-person classes at the end of September of 2020, and never resumed in-person classes as a result of the lack of investigation or meaningful remedy.

88.    Plaintiff stopped attending St. Edward High School in December of 2020 because of the sexual assaults and subsequent bullying, hazing, and intimidation, and the Defendants' failure to investigate or fix the issues.

89.    Plaintiff and his family moved from the area, yet Plaintiff still receives social media and text messages from the Delinquents and other members of the cross-country team designed to intimidate, harass, and/or humiliate him.

90.    Upon reliable information and belief, Delinquent 1 and Delinquent 2 remain members of the St. Edward High School track and cross-country teams.

91.    Upon reliable information and belief, Delinquent 1 continues to engage in obscenely misogynistic and bigoted behavior and comments in full view of other team members and the coaches.

92.    To date, none of the Defendants have investigated any of the pedophilic exchanges, the targeting of in-coming freshman, and have not reached out to Plaintiff in any respect since October 14, 2020.

**COUNT ONE – TITLE IX VIOLATION**
**(Sexual Assault in Violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* Against All Defendants)**

93.    Plaintiff restates each preceding allegation as if fully rewritten herein.

94.   Title IX covers a host of conduct that creates a hostile educational environment based on sex, including sexual harassment, gender-based harassment, and sexual violence, which is a form of sexual harassment that includes rape, sexual assault, sexual battery and sexual coercion.

95.   Title IX protects students from sexual violence in connection with all the academic, educational, extracurricular, athletic, and other programs of a school, whether the programs occur on school grounds, on a school bus, during a field trip, or during any other school sponsored events.

96.   Title IX applies to all schools that receive any federal funds. This includes all public elementary and secondary schools, private and parochial schools that participate in the federal free lunch program or receive other federal funding, and schools that are formally affiliated with another school (such as a diocese) that receives federal money.

97.   St. Edward High School has received federal funding, including funding for broadband services associated with its school and library.

98.   Title IX requires schools to address sexual violence regardless of the sex of the complainant or alleged perpetrator, including when they are members of the same sex.

99.   Title IX of the Education Amendments of 1972, codified at 20 U.S.C § 1681 (Title IX) provides an avenue of legal relief for victims of sexual abuse and harassment that occurred in connection with educational institutions.

100.  Title IX provides a cause of action against a school and its responsible employees when their actions are deliberately indifferent to sexual harassment, of which they

have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

101. St. Edward High School, its board, and the individual Defendants are liable under Title IX for a deliberately indifferent response to severe, pervasive, and objectively offensive student-on-student sexual harassment.

102. St. Edward High School, its board, and the individual Defendants are liable under Title IX as their deliberate indifference has deprived Plaintiff to the educational opportunities and benefits provided by the school.

103. St. Edward High School operations are covered by Title IX.

104. St. Edward High School had actual knowledge of student-on-student sexual harassment and abuse that was severe, pervasive, and objectively offensive, and which deprived Plaintiff of access to the educational opportunities and benefits of the school.

105. The response of St. Edward High School was so deficient as to amount to deliberate indifference to the harassment and abuse.

106. The individual Defendants had actual notice of the sexual harassment and abuse.

107. Defendant Brannen had actual knowledge of sexual harassment and abuse.

108. Defendant Brannen, in his role as head coach, is an official of St. Edward High School who at a minimum had authority to address the harassment and abuse and to institute corrective measures on Plaintiff's behalf.

109. Defendant Brannen had actual knowledge of a substantial risk of sexual harassment and abuse.

110. Defendant Kubaki, in his role as President, is an official of St. Edward High School who at a minimum had authority to address the harassment and abuse and to institute corrective measures on Plaintiff's behalf.

111. Defendant Kubacki had actual knowledge of a substantial risk of sexual harassment and abuse.

112. Defendant McKenna, in his role as Principal, is an official of St. Edward High School who at a minimum had authority to address the harassment and abuse and to institute corrective measures on Plaintiff's behalf.

113. Defendant McKenna had actual knowledge of a substantial risk of sexual harassment and abuse.

114. St. Edward High School and the individual Defendants exercised substantial control over the harassers and abusers, as set forth in the Student Handbook of St. Edward High School which includes Discipline policies.

115. St. Edward High School and the individual Defendants, at all times, maintained disciplinary authority over the students responsible for the harassment and assaults.

116. St. Edward High School and the individual Defendants exercised substantial control over the harassers in the context in which the harassment and assaults occurred, to wit, they occurred at school-sponsored events, trips, and extracurricular activities.

117. The harassment and assaults suffered by Plaintiff was severe, pervasive, and objectively offensive.

118. The harassment and assaults suffered by Plaintiff caused him to withdraw from in-person school and ultimately withdraw from St. Edward High School entirely.

119.  The harassment and assaults suffered by Plaintiff harmed his grades, his athletics, and his overall quality of life.

120.  Plaintiff was denied educational access resulting from the harassment and assaults, and the subsequent retaliation.

121.  Defendants feigned an investigation, but instead instructed students to delete information relevant and critical to an investigation.

122.  Defendants knew or should have known that Plaintiff was discriminated against as a result of the sexual assaults, harassment, intimidation, and hostile environment caused by other students.

123.  Defendants knew or should have known that their deliberate indifference to the complaints of Plaintiff exacerbated the hostile environment .

124.  Defendants failed to carry out their duties and obligations pursuant to Title IX to investigate and take corrective action.

125.  Defendants permitted an educational and athletic environment in which discriminatory, harassing, and abusive practices occurred against Plaintiff that were sufficiently severe or pervasive to create an environment that was both subjectively and objectively hostile, abusive, and retaliatory.

126.  Defendants knew of and tolerated the sexually abusive educational and athletic environment, or, in the alternative, knew, or should have known, of its existence, yet failed to conduct proper investigations and failed to take remedial action.

127.  As a direct and proximate result of Defendants' unlawful actions or inactions, Plaintiff has suffered and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional

and physical distress, mental anguish, and other economic and non-economic damages.

128. Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorney's fees and costs, and other appropriate relief.

### COUNT TWO – TITLE IX RETALIATION
**(Retaliation in Violation of Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* Against All Defendants)**

129. Plaintiff restates each of the foregoing allegations as if fully rewritten herein.

130. Defendants have retaliated against Plaintiff in violation of Title IX by, inter alia, failing to properly investigate his claims of discrimination and sexual assault.

131. In the course of their so-called investigation, Defendants deliberately provided sufficient information and directives to students to deduce that Plaintiff was the complaining party.

132. In doing so, Defendants exacerbated the intimidation, hazing, and abusive treatment toward Plaintiff by the students.

133. Defendants committed, caused, and/or aided and abetted the retaliatory conduct against Plaintiffs.

134. As a direct and proximate result of Defendants' unlawful conduct in violation of Title IX, Plaintiff has suffered, and continues to suffer, harm for which he is entitled to an award of damages to the greatest extent permitted by law, including, but not limited to, monetary and/or economic harm.

135. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional

and physical distress, mental anguish, and other economic and non-economic damages.

136. Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorney's fees and costs, and other appropriate relief

### COUNT FOUR – NEGLIGENCE

137. Plaintiff restates each of the foregoing allegations as if fully rewritten herein.

138. Defendants owed duties of care to Plaintiff including:

   a.  Protecting him from assaults, hazing, and/or bullying by other students;

   b. Protecting him from and otherwise supervising students who Defendants know, or should have known, to have a history of inappropriate sexual misconduct;

   c. Supervising students in school-sponsored extracurricular activities;

   d. Supervising students in school-sponsored athletics and athletic trips;

   e. Preventing student-on-student sexual assaults;

   f. Preventing student-on-student intimidation;

   g. Preventing social media abuse by other students;

   h. Properly investigating complaints of sexual abuse, hazing, bullying, harassment, and/or intimidation;

   i. Properly remedying instances of sexual abuse, hazing, bullying, harassment, and/or intimidation;

   j. Preventing retaliation against Plaintiff as a result of bringing a complaint to the Defendants' attention.

139. Defendants breached the duties owed to Plaintiff as they failed to protect him from foreseeable harm; failed supervise students who they knew to have a history of inappropriate sexual misconduct; failed to supervise students in school-sponsored events; failed to prevent social media abuse, hazing, or bullying; failed to investigate or remedy claims of sexual abuse, hazing, bullying, harassment, and/or intimidation; and failed to prevent retaliation against Plaintiff.

140. Defendants' negligence caused Plaintiff harm physically, mentally, emotional, caused his grades to suffer, and caused him to withdraw from St. Edward High School.

141. As a direct and proximate cause of Defendants' negligence, Plaintiff has suffered and Plaintiff has suffered and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages.

142. The actions of Defendants were done willfully, maliciously, and/or with reckless disregard, and thereby subjects them to punitive and exemplary damages.

**COUNT THREE – NEGLIGENT HIRING, RETENTION, AND SUPERVISION**

143. Plaintiff restates each of the foregoing allegations as if fully rewritten herein.

144. Defendant St. Edward High School hired Defendant McKenna and Defendant Brannen and placed them into a position of trust and responsibility.

145. Defendant Brannen knew that Delinquent 1 had a history of engaging in inappropriate sexual misconduct or other inappropriate behavior when left unsupervised.

146. Defendant Brannen knew that he owed a duty of care to Plaintiff and the other students entrusted to him to protect them from foreseeable harm during school-sponsored events.

147. Defendant Brannen admittedly avoided and/or disregarded any care or supervision of the students and instead preferred only to coach track.

148. When presented with video evidence of a sexual assault, Defendant Brannen owed a duty to investigate, remediate, and preserve information.

149. Instead, Defendant Brannen attempted to dissuade further complaints about the sexual assault.

150. Defendant Brannen instructed students to delete any evidence of the sexual assault or other information on their phones in advance of an investigation.

151. Defendant Brannen's actions were known, approved, and/or permitted by Defendant McKenna.

152. Defendant McKenna had a duty of care to Plaintiff and the other students to investigate, remediate, and preserve information relating to student-on-student sexual assault, bullying, hazing, intimidation, and retaliation.

153. Defendant McKenna knew that Defendant Brannen had instructed students to delete relevant information and that students were creating false stories to present in the investigation.

154. Defendant McKenna assigned the internal St. Edward High School investigation to an individual who was wholly unprepared and lacked the knowledge, training, or skill to investigate claims of sexual abuse, bullying, hazing, intimidation and/or retaliation.

155. Knowing that Plaintiff and his family were relying upon the St. Edward High School investigation, Defendant McKenna deliberately misinformed them that the school was participating in a criminal investigation.

156. The incidents complained of by Plaintiff were not the first or second instances of similar student-on-student misconduct during the employment of Defendants McKenna and/or Brannen.

157. Defendant St. Edward High School knew or should have known that Defendants McKenna and Brannen were incompetent, incapable, undertrained, and/or unable to protect the Plaintiff or other students, or to adequately investigate and remedy complaints of sexual assault, hazing, bullying, intimidation and/or retaliation.

158. Defendant St. Edward High School knew or should have known that Defendants McKenna and Brannen had a propensity and/or history of disregarding, failing to investigate, and/or failing to remediate complaints of student-on-student misconduct.

159. Nonetheless, Defendant St. Edward High School has placed Defendants McKenna and Brannen in a position wherein they are responsible for preventing, investigation, and remedying student-on-student misconduct.

160. As it pertains to Plaintiff, Defendants St. Edward High School, McKenna, and Brannen failed to prevent, investigate, or remedy student-on-student misconduct.

161. Defendants' negligence caused Plaintiff harm physically, mentally, emotional, and caused him to withdraw from St. Edward High School.

162. As a direct and proximate cause of Defendants' negligence, Plaintiff has suffered and Plaintiff has suffered and will continue to suffer harm including, but not limited to, loss of educational opportunities, humiliation, embarrassment, reputational harm,

emotional and physical distress, mental anguish, and other economic and non-economic damages.

163. The actions of Defendants were done willfully, maliciously, and/or with reckless disregard, and thereby subjects them to punitive and exemplary damages.

## COUNT FIVE – SPOLIATION OF EVIDENCE

164. Plaintiff restates each of the foregoing allegations as if fully rewritten herein.

165. Defendants knew or should have known that Plaintiff's claims relating to sexual abuse, bullying, hazing, intimidation and/or retaliation would result or were likely to result in litigation by Plaintiff.

166. Defendants willfully destroyed evidence and directed the students under their control to destroy evidence.

167. The destroyed evidence included potential criminal evidence, including pedophilic images and videos, as well as evidence of the sexual assault, physical assault, bullying, hazing, and intimidation against Plaintiff.

168. The destroyed evidence was designed to interfere with an investigation.

169. Defendant were under a duty to preserve evidence that it knew or reasonably should have known was relevant to the claims.

170. Plaintiff has been damaged by the destruction of evidence as it has prevented him from a complete investigation and preservation of his rights and remedies.

171. As a direct and proximate result of Defendant's spoliation of evidence, Plaintiff has suffered economic injuries in an amount to be determined at trial.

172. The actions of Defendants were done willfully, maliciously, and/or with reckless disregard, and thereby subjects them to punitive and exemplary damages.

## COUNT SIX–INFLICTION OF EMOTIONAL DISTRESS

173. Plaintiff restates each of the foregoing allegations as if fully rewritten herein.

174. Defendants knew that Delinquent 1 was a problematic student, particularly in an unsupervised setting.

175. Defendants allowed Delinquent 1 access to Plaintiff in an unsupervised setting, whereupon Plaintiff was physically assaulted in a sexual manner.

176. That assault was witnessed, recorded and shared among students.

177. When it was reported, Defendants attempted to dissuade, minimize, cover-up, and destroy information relevant to the complaint.

178. The Defendants lied about their commitment to an investigation.

179. Defendants neither investigated nor remedied the student-on-student assault, bullying, hazing, intimidation, and retaliation.

180. Defendants placed Plaintiff in a position where he was required to have continued contact with the student who sexually assaulted him and the other students who mocked, intimidated, and retaliated against him.

181. The Defendants' conduct was outrageous.

182. The Defendants' conduct was either negligent, reckless, or intended to cause emotional distress to Plaintiff.

183. As a result of Defendants' conduct, Plaintiff suffered severe and debilitating physical and emotional distress, including vomiting, insomnia, anxiety, and other post-traumatic stress.

184.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer harm including, but not limited to emotional and physical distress, mental anguish, and other economic and non-economic damages.

185.    The actions of Defendants were done willfully, maliciously, and/or with reckless disregard, and thereby subjects them to punitive and exemplary damages.

**WHEREFORE,** having fully pled each cause of action, Plaintiff respectfully request this Court enter judgment in his favor on all causes of action and award the following relief:

A.    Monetary damages for the loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic and non-economic damages;

B.    All legal and equitable remedies available for violations of Title IX, including compensatory damages, attorney's fees and costs, and other appropriate relief;

C.    Payment of all medical costs and tuition payments;

D.    Payment of costs of this action, together with reasonable attorney's fees and disbursements;

E.    Injunctive relief as this Court deems just and equitable;

F.    Punitive and exemplary damages; and

G.    Such further relief as this Court deems just and equitable.

Respectfully Submitted,

/s/ Jeffrey C. Miller

Jeffrey C. Miller (#0068882)
Russell Rendall (#0089901)
Donald W. Davis Jr. (#0030559)
BRENNAN MANNA DIAMOND LLC
200 Public Square, Suite 3270
Cleveland, Ohio 44114
P:  (216) 658-2155
F:  (216) 658-2156
E:  jcmiller@bmdllc.com
      rtrendell@bmdllc.com
      dwdavis@bmdllc.com


## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) Fed. R. Civ. P., Plaintiff hereby demands a trial by jury for any and all issues triable of right by a jury.

Respectfully Submitted,

/s/ Jeffrey C. Miller

Jeffrey C. Miller (#0068882)
Russell Rendall (#0089901)
Donald W. Davis Jr. (#0030559)
BRENNAN MANNA DIAMOND LLC
200 Public Square, Suite 3270
Cleveland, Ohio 44114
P:  (216) 658-2155
F:  (216) 658-2156
E:  jcmiller@bmdllc.com
      rtrendell@bmdllc.com
      dwdavis@bmdllc.com